**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD LEHMAN, on behalf of himself and others similarly situated,
*Plaintiff-Appellee*,

v.

WARNER NELSON; WILLIAM BECK, JR.; BRIAN BISH; KLAAS A. DEBOER; MICHAEL G. MARSH; ROCKY SHARP; RICHARD BAMBERGER; DENNIS CALLIES; CLIF DAVIS; TIM DONOVAN; HARRY THOMPSON; GARY YOUNGHANS, in Their Capacity as Trustees of the Ibew Pacific Coast Pension Plan; CLINT BRYSON; MICHAEL CHURCH; MICHAEL DOYLE; GREG ELDER; GLEN FRANZ; GARY GONZALES; CARL D. HANSON; PATRICK POWELL; GARY PRICE; SCOTT STEPHENS; ROGER TOBIN; GRANT ZADOW,
*Defendants-Appellants*.

No. 15-35414

D.C. No.
2:13-cv-01835-RSM

| | |
|---|---|
| RICHARD LEHMAN, on behalf of himself and others similarly situated, *Plaintiff-Appellant/ Cross-Appellee*, <br><br> v. <br><br> WARNER NELSON; WILLIAM BECK, JR.; BRIAN BISH; KLAAS A. DEBOER; MICHAEL G. MARSH; ROCKY SHARP; RICHARD BAMBERGER; DENNIS CALLIES; CLIF DAVIS; TIM DONOVAN; HARRY THOMPSON; GARY YOUNGHANS, in their capacity as Trustees of the IBEW Pacific Coast Pension Plan; CLINT BRYSON; MICHAEL CHURCH; MICHAEL DOYLE; GREG ELDER; GLEN FRANZ; GARY GONZALES; CARL D. HANSON; PATRICK POWELL; GARY PRICE; SCOTT STEPHENS; ROGER TOBIN; GRANT ZADOW, <br>          *Defendants-Appellees/ Cross-Appellants.* | Nos. 15-35457 15-35696 <br><br> D.C. No. 2:13-cv-01835-RSM <br><br> OPINION |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, Chief Judge, Presiding

Argued and Submitted on June 12, 2017
Seattle, Washington

Filed July 14, 2017

Before:  Dorothy W. Nelson, Milan D. Smith, Jr.,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

## SUMMARY[*]

**Employee Retirement Income Security Act**

The panel affirmed in part and reversed in part the district court's judgment in favor of the plaintiffs in an ERISA class action concerning a pension fund.

After the trustees of the IBEW Pacific Coast Pension Fund learned that it would soon enter "critical status" under the Pension Protection Act of 2006, they amended the pension plan twice, in Amendments 14 and 24, and began withholding at least $1.00 per hour from all employer contributions to improve the plan's funding status.  The named plaintiff was a "traveler" who worked in the jurisdictions of various local union pension funds, and his employers in those jurisdictions contributed to the local funds for the areas in which the work was performed.  Under a reciprocal agreement among home funds, the plaintiff's employer contributions were transferred to his home pension fund.  Under Amendment 14, the Pacific Coast Fund withheld

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

$1.00 per hour that the plaintiff worked in the Fund's jurisdiction.

The district court granted summary judgment in favor of the plaintiff in part, ruling that the trustees abused their discretion as plan administrator in interpreting Amendment 14's $1.00 withholding to apply to reciprocal transfers. The district court also certified a plaintiffs' class. In a clarifying order, the district court ruled that its previous orders also applied to withholding under Amendment 24, and it awarded damages for withholdings under both amendments.

The panel held that only Amendment 14 was fully litigated before the district court, and vacated the damages award for withholdings under Amendment 24 because the trustees did not have notice that those withholdings were at issue, nor an opportunity to respond. Affirming the damages award for withholdings under Amendment 14, the panel held that the district court correctly interpreted the interaction between Amendment 14, Article 5 of the pension plan, and the reciprocal agreement. The panel concluded that the district court erred by ruling, in the alternative, that interpretation of Amendment 14 to apply to travelers who worked in the Pacific Coast Fund's jurisdiction on a temporary basis violated ERISA § 305. The panel remanded for further proceedings on the withholdings under Amendment 24.

The panel also vacated the district court's award of attorneys' fees. It declined to reach the plaintiffs' issues on cross-appeal.

**COUNSEL**

Seth Floyd (argued), Nathan R. Ring, and Michael A. Urban, The Urban Law Firm, Las Vegas, Nevada, for Defendants-Appellants/Defendants-Appellees/Cross-Appellants Warner Nelson, et al.

Richard J. Birmingham (argued), Christine Hawkins, and Joseph P. Hoag, Davis Wright Tremaine, Seattle, Washington, for Plaintiff-Appellee/Cross-Appellant/Plaintiff-Appellant Richard Lehman.

**OPINION**

CHRISTEN, Circuit Judge:

In May 2008, the Trustees of the IBEW Pacific Coast Pension Fund learned that the Fund would soon enter "critical status" under the Pension Protection Act of 2006. In response, the Trustees amended the Pacific Coast Fund Pension Plan twice—in Amendments 14 and 24—and began withholding at least $1.00 per hour from all employer contributions to improve the Plan's funding status. Richard Lehman filed a putative class action against the Trustees under the Employee Retirement Income Security Act of 1974 (ERISA). Lehman alleged that the Trustees breached the Pension Plan's terms, violated ERISA sections 204 and 305, and breached their fiduciary duties by withholding $1.00 per hour from his employer contributions without providing an accrued benefit.

The district court granted Lehman's motion for summary judgment, in part, and ruled that he was entitled to the

withheld contributions under the terms of the Pension Plan. After the parties stipulated to a class definition, the district court certified the class and awarded damages, attorneys' fees, and costs to the plaintiffs. The Trustees appeal the summary judgment order, an order granting the plaintiffs' motion to enforce or clarify the order, and the damages award. The plaintiffs cross-appeal, seeking alternative relief under ERISA sections 502(a)(2) and (a)(3) if the court reverses the district court's grant of summary judgment under ERISA section 502(a)(1)(B). The plaintiffs also appeal the district court's determination of a reasonable hourly rate for the attorneys' fees award. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

## BACKGROUND

### I. Travelers and the Electrical Industry Pension Reciprocal Agreement

Richard Lehman is an electrician based in the Puget Sound area. He is a member of the Puget Sound Electrical Workers Pension Trust, but his profession frequently requires him to perform work for employers located outside the jurisdiction of his home pension fund. There are many so-called "travelers" in the electrical construction industry who work in the jurisdictions of other local union pension funds. When Lehman and other travelers are temporarily employed outside the jurisdiction of their home funds, their employers contribute to the local funds for the areas where they perform work.

In recognition of the fact that travelers could receive multiple small pensions or lose pension benefits as a result of

their work in other jurisdictions, the trustees of many local funds entered into the Electrical Industry Pension Reciprocal Agreement. Under the Reciprocal Agreement, travelers can elect to have employer contributions electronically transferred to a designated home pension fund.

The Reciprocal Agreement requires participating funds to keep a "separate account" of contributions received on behalf of each traveler and to transfer an amount equal to all contributions received back to the traveler's home fund within thirty days of receipt. The Reciprocal Agreement prohibits participating funds from charging administrative fees "for the transfer or for any other reason." Under the Reciprocal Agreement, travelers accrue benefits in their home pension funds for "[a]ll hours worked in any Participating Fund for which Monies are transferred," and the terms of their home pension plans govern benefit accrual.

The Reciprocal Agreement requires participating funds to "take all actions . . . necessary to fully implement this Agreement." Participating funds can amend the Reciprocal Agreement at any time through "the written approval of a proposed amendment by a simple majority." Participating plans can also terminate their participation in the Reciprocal Agreement by following specified termination procedures. Finally, the Reciprocal Agreement outlines a detailed dispute-resolution process for participating funds to address any disagreements or questions that arise out of the Agreement.

The IBEW Pacific Coast Pension Fund (the Pacific Coast Fund) is a signatory to the Reciprocal Agreement. Article 5 of the Pacific Coast Fund Pension Plan (the Pension Plan) incorporates provisions from the Reciprocal Agreement into the Plan. Section 5.04 of the Pension Plan states that the

Pacific Coast Fund "shall collect and transfer to the Home Pension Fund all contributions received on behalf of the Employee for work performed by the Employee within [the Pacific Coast Fund's] jurisdiction."

## II. The Pension Protection Act of 2006 and the Pacific Coast Fund

The Pension Protection Act of 2006 is designed to help severely underfunded multiemployer pension plans recover. The Act—codified in relevant part at ERISA section 305—requires plan actuaries for multiemployer plans to annually certify "whether or not the plan is or will be in critical status for such plan year or for any of the succeeding 5 plan years" within ninety days of the start of the plan year. 29 U.S.C. § 1085(b)(3)(A)(i). If the plan is certified to be in critical status, ERISA section 305(a)(2)(A) requires the plan sponsor to "adopt and implement a rehabilitation plan" formulated "to enable the plan to cease to be in critical status by the end of the rehabilitation period." *Id.* § 1085(a)(2)(A), (e)(3)(A)(i). The Act sets a deadline for plan sponsors to enact a rehabilitation plan after critical status certification, *id.* § 1085(e)(1)(A), but it does not prohibit plan sponsors from acting before certification to improve the plan's funding status.

### A. Amendment 14: $1.00 Hourly Withholding on all Contributions

In May 2008, the Trustees of the Pacific Coast Fund learned that the Pension Plan was severely underfunded for 2009 and subsequent plan years. Based on a report from the Pension Plan's actuary stating that the "Plan's funding levels were getting perilously close to critical status level under the

Pension Protection Act of 2006," the Trustees enacted Amendment 14. Amendment 14 took effect on July 1, 2008 and added section 3.03(b) to the Pension Plan. Section 3.03(b) states:

> Notwithstanding the foregoing or any other provision of the Plan to the contrary effective July 1, 2008, the first one dollar ($1.00) of required contribution for each and every Hour of Covered Work on and after July 1, 2008, shall not result in any monthly benefit accrual and shall be utilized solely to improve the funding of the Plan. The same reduction is applicable for required Contributions pursuant to subscription agreements and reciprocal transfers for each and every hour on and after July 1, 2008. . . . The Trustees['] intent in adopting this reduction is to improve the funding condition of the Plan and to encourage collective bargaining parties to recognize the need for increased hourly contributions to the Plan.

Amendment 14 did not remove the language in section 5.04 of the Pension Plan governing transfers to travelers' home pension funds, and the Trustees did not terminate their participation in the Reciprocal Agreement nor seek to amend it before enacting Amendment 14.

### B. Amendment 24: The Rehabilitation Plan

On June 29, 2009, the Pacific Coast Fund's actuary certified that the Pension Plan was in "critical status" for the plan year beginning April 1, 2009. As required by the

Pension Protection Act of 2006, the Trustees adopted a formal rehabilitation plan on July 8, 2009 through Amendment 24.  Amendment 24 added several new provisions to the Pension Plan, including Article 16, which contains the Rehabilitation Plan itself.  The Rehabilitation Plan established a default schedule and two alternative schedules describing required increases in employer contributions and reduced benefit-accrual rates that would take effect upon each schedule's implementation.

The default schedule and two alternative schedules contain different increases in required contribution levels from employers and different reductions in benefit-accrual rates.  Because travelers who work in the Pacific Coast Fund's jurisdiction on a temporary basis accrue benefits in their home funds, they are not affected by the changes in benefit-accrual rates for the Pension Plan, but they are affected by Amendment 24 in other ways.

First, Amendment 24's Rehabilitation Plan imposed a $1.00 hourly withholding from employer contributions for contribution rates below $3.00 per hour.[1]  Second, the Rehabilitation Plan established an additional withholding of all required increases in employer contributions and all surcharge payments made in accordance with the Pension Protection Act of 2006.[2]  The Rehabilitation Plan describes

---

[1] The $1.00 hourly withholding in Amendment 24 differs from that in Amendment 14 because Amendment 24 only applies to contribution rates less than $3.00 per hour while Amendment 14 applies to all contribution rates.

[2] The Pension Protection Act of 2006 mandates the imposition of an "employer surcharge" for plans in critical status.  *See* 29 U.S.C.

the required increases in employer contributions as "non-benefit contributions," and explains the withholdings as follows:

> Participants who work inside the jurisdiction of this Fund and who have employer contributions sent to an outside fund under a "money follows the man" reciprocity agreement shall have the first dollar of each hourly contribution (for contributions rates less than $3.00 per hour), all increased non-benefit contributions under any Schedule and all employer surcharge contributions remain in the [Pacific Coast Fund] for funding purposes only. These contributions result in no benefit accruals for any participant.

In sum, with respect to travelers who work in the Pacific Coast Fund's jurisdiction on a temporary basis, the Rehabilitation Plan requires employers to contribute increasing amounts of money over time, classifies all increases beyond the contribution rates in effect on July 22, 2009 as "non-benefit contributions," withholds all non-benefit contributions, withholds $1.00 per hour on employer contributions of less than $3.00 per hour, and withholds surcharge payments. While the amount of the increase in the new "non-benefit contributions" and the corresponding withholdings vary among the default and alternative schedules, all three schedules require increased contributions and state that these increases "shall be utilized solely to improve the funding condition of the Plan."

---

§ 1085(e)(7). The parties do not dispute the Trustees' right to withhold the surcharge payments under Amendment 24.

Amendment 24 did not delete or otherwise alter the text of section 5.04—the Pension Plan provision requiring transfer of all employer contributions received on behalf of travelers (i.e., the "pass through" contributions routed to the travelers' home funds). But Amendment 24 added sections to each preexisting article of the Pension Plan, including Article 5, stating that "for all benefits commencing on or after July 22, 2009, any provision in this Article which is inconsistent with the requirements of Article 16, the Rehabilitation Plan, shall be superseded by the provisions contained within Article 16, except to the extent otherwise required by applicable law or regulations."

## III.     Procedural History

Between July 2008 and March 2009, the Pacific Coast Fund withheld $1.00 per hour for each hour that Richard Lehman worked in the Fund's jurisdiction under Amendment 14. Lehman did not work in the Pacific Coast Fund's jurisdiction after March 2009 so he was never subjected to any withholdings under Amendment 24's Rehabilitation Plan. In October 2013, Richard Lehman filed suit on behalf of himself and all others similarly situated "to recover reciprocity contributions improperly withheld by the Defendants, and the earnings thereon." In the alternative, he requested "an accrued benefit based on such contributions." Lehman sought relief under ERISA sections 502(a)(1)(B), (a)(2), and (a)(3), arguing that he was entitled to the withheld contributions under the terms of the Pension Plan, that the Trustees violated ERISA sections 204 and 305 through the $1.00 hourly withholding, and that the Trustees breached their fiduciary duties by improperly administering the Plan.

Two months after Lehman filed suit, the Trustees moved to dismiss, arguing that Lehman lacked the right to enforce the terms of the Reciprocal Agreement. Roughly one week later, Lehman moved for summary judgment. The parties jointly requested that the district court defer briefing on class certification until after it ruled on the outstanding motions.

The district court denied the Trustees' motion to dismiss and granted Lehman's motion for summary judgment, in part. The district court ruled that the Trustees abused their discretion as plan administrator by interpreting Amendment 14's $1.00 hourly withholding on all hours worked to apply to transfers under Article 5 of the Pension Plan. The district court reasoned that Amendment 14 was ambiguous with respect to whether it applied to reciprocal transfers into or out of the Pacific Coast Fund. If Amendment 14 applied to reciprocal transfers out of the Fund, then Amendment 14 would conflict with Article 5 of the Pension Plan. The district court granted summary judgment for Lehman on his claim under ERISA section 502(a)(1)(B), ruling that Lehman was entitled to relief under the terms of the Pension Plan.

In the alternative, the district court concluded that the Trustees' interpretation of Amendment 14 would violate ERISA section 305 by reducing benefit-accrual rates on the withheld contributions to zero. But the district court denied summary judgment without prejudice on Lehman's claims for breach of fiduciary duty and equitable relief under ERISA sections 502(a)(2) and (a)(3) because the court found that the requested remedy—the transfer of all wrongfully withheld contributions—was available under section 502(a)(1)(B).

Shortly after the district court granted summary judgment in part, Lehman filed a motion for clarification, asking the

court "to confirm that the relief granted to Plaintiff includes *earnings* on the wrongfully withheld reciprocity contributions." The Trustees did not oppose the motion, and the district court granted it.

After summary judgment and the first clarification order, the parties jointly requested that the district court name Lehman class representative and stipulated to a class definition. The district court accepted the stipulation, and defined the class as all individuals:

> a. on whose behalf contributions were required to be made to the IBEW Pacific Coast Pension Plan pursuant to the terms of a collective bargaining agreement at any time from July 1, 2008 to present; and
>
> b. who had requested that such contributions be transferred to another pension fund pursuant to the terms of the IBEW Pacific Coast Pension Plan's adoption of the National Electrical Industry Pension Reciprocal Agreement; and
>
> c. who did not have such contributions transferred in full, but instead, all or a portion of such contributions were withheld by the IBEW Pacific Coast Pension Plan, its agents, employees, fiduciaries, affiliates, or service providers.

The same day that the district court certified the class, Lehman filed a second motion seeking clarification. In response to discovery requests on the amount of damages, the

Trustees indicated that they viewed the court's summary judgment order and its order granting the first motion for clarification as only governing contributions withheld under Amendment 14. In contrast, the plaintiffs maintained that these orders applied to all amounts withheld from travelers' contributions under Amendments 14 and 24, including the required increases in employer contributions under the default and alternative schedules in Amendment 24's Rehabilitation Plan. The Trustees opposed the plaintiffs' second motion to enforce or clarify, arguing that the complaint, first amended complaint, summary judgment briefing, and district court's orders all focused on amounts withheld pursuant to Amendment 14. According to the Trustees, the parties had not yet litigated amounts withheld under Amendment 24. In a four-page order, the district court ruled that its previous orders applied to both the $1.00 hourly withholding under Amendment 14 and "the often greater and equally unsupported withholdings" under Amendment 24. The district court awarded damages for withholdings under both amendments.

Finally, the district court granted the plaintiffs' motion for attorneys' fees and costs under ERISA section 502(g). *See* 29 U.S.C. § 1132(g). However, the district court ruled that the plaintiffs "failed to meet their burden to establish a reasonable hourly rate" and found the suggested rates unreasonable. The court awarded an hourly rate of $350 for all attorney time, compared to the requested hourly rates of $665 for the lead class counsel and $400 for associates. This cross-appeal followed.

## DISCUSSION

### I.  Only Amendment 14 Was Fully Litigated

The Trustees argue that the class raised a new legal theory after the district court granted summary judgment to Lehman and that the district court violated the Trustees' due process rights by ruling on the issue without giving them a full and fair opportunity to respond.  According to the Trustees, the complaint, first amended complaint, summary judgment briefing, and the district court's orders all focused on the $1.00 hourly withholding under Amendment 14.  The plaintiffs maintain that the summary judgment order and the district court's order granting the first motion to clarify also applied to amounts withheld under Amendment 24's Rehabilitation Plan, including the $1.00 hourly withholding on contribution rates below $3.00 per hour and the withholding of all required increases in employer contributions under the default and alternative schedules.  The district court agreed with the plaintiffs, ruling that the parties had already litigated withholdings under Amendment 24, and awarding damages in an amount equal to all withholdings under both amendments.  We respectfully disagree with the district court's conclusion that the parties fully litigated issues related to Amendment 24.

### A.  Allegations in the Complaints

"Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).  This court reviews de novo "a

district court's determination of whether a plaintiff's complaint complied with the notice pleading requirements" under Rule 8(a)(2). *Id.*

The Trustees are correct that the complaints focus almost exclusively on the $1.00 withholding under Amendment 14, and only vaguely refer to any withholding under Amendment 24.[3] The complaints mention the $1.00 hourly withholding on all contributions in Amendment 14 eight times, but never mention the withholding of increased employer contributions under Amendment 24. The factual allegations describe Lehman's work history and the parties agree that Lehman was never subjected to any withholdings under Amendment 24, but the district court erroneously stated that Lehman was subjected to withholdings under Amendment 24 in the background section of its summary judgment order. The complaints assert that "the Plan has improperly withheld $1.00 for each hour that [Lehman] worked within the jurisdiction of the Plan," and that the "Trustees' withholding of $1.00 per hour of reciprocity funds violates the [Reciprocal Agreement], as well as the Plan provisions." All specific allegations in the complaints refer to the $1.00 hourly withholding in Amendment 14.

There are at best four references to Amendment 24's Rehabilitation Plan in the complaints. First, there is a paragraph that states: "The withholding of contributions without the accrual of benefits violates Section 305 of

---

[3] With the defendants' consent, Lehman filed a first amended complaint on May 29, 2014, before the district court ruled on the defendants' motion to dismiss or Lehman's motion for summary judgment. The first amended complaint added new defendants, but is otherwise identical to the original complaint.

ERISA, 29 U.S.C. Section 1085. Under Section 305 of ERISA, the schedule of benefits in a rehabilitation plan cannot eliminate all future accruals." This reference is consistent with the plaintiffs' argument that Amendment 14 constituted the first phase of the Trustees' rehabilitation effort under the Pension Protection Act of 2006 and violated ERISA section 305 by reducing benefit-accrual rates on the withholdings to zero. This paragraph is also located between other paragraphs that explicitly refer to the $1.00 hourly withholding in Amendment 14, suggesting that the complaints' reference to "a rehabilitation plan" likewise pertains to Amendment 14.

The next reference states that the "Trustees violated their fiduciary duty by adopting Rehabilitation provisions that violated Plan provisions, ERISA, and the National Electrical Industry Pension Reciprocal Agreement." Although this paragraph refers to multiple "provisions," it is immediately followed by a paragraph that describes the $1.00 hourly withholding in section 3.03(b) of the Pension Plan (Amendment 14) and does not refer to any specifics related to Amendment 24.

Next, the complaints contend that "Article 16 of the Plan does not authorize the withholding of $1.00 per hour if the contribution rate is *$3.00 or more*. The Trustees wrongfully withheld $1.00 on contribution rates of *[$]3.00 or more*." This is the only paragraph in the complaints that explicitly refers to Amendment 24, which added Article 16 (the Rehabilitation Plan) to the Pension Plan, but even this paragraph does not refer to the withholding of increased employer contributions under any of the schedules in the Rehabilitation Plan. In fact, this paragraph suggests that the Trustees did have the authority to withhold $1.00 per hour

from contribution rates *less than $3.00 per hour*, i.e., the rate in Amendment 24's Rehabilitation Plan, because Amendment 24's $1.00 hourly withholding only applies to contribution rates *less than $3.00 per hour*, while Amendment 14's $1.00 hourly withholding applies to *all contribution rates*.

The last possible reference to the Rehabilitation Plan in the complaints similarly implies that the Trustees had the authority to withhold contributions under Amendment 24: "The application of the $1.00 funding withholding on Reciprocity transfers *prior to* the effective date of the Rehabilitation period violates Sections 305 and 204 of ERISA." If anything, this paragraph suggests that withholdings *after* the Plan was actually certified to be in critical status and the Trustees adopted the formal Rehabilitation Plan in Amendment 24, do not violate ERISA. Once the Plan's actuary certified that the Plan was in critical status in June 2009, ERISA section 305(e) required the Trustees to adopt a formal rehabilitation plan "to enable the plan to cease to be in critical status by the end of the rehabilitation period." 29 U.S.C. § 1085(e)(3)(A)(i). In Amendment 24's Rehabilitation Plan, the Trustees specified that the Rehabilitation Period would last for thirteen years, from April 1, 2010 to April 1, 2023.[4]

The complaints also refer to a letter from the counsel for the Reciprocal Administrator, who opined that withholding traveler contributions violated the Reciprocal Agreement. Although the letter refers to the "rehabilitation plan," the letter is dated April 23, 2009, roughly three months before the Trustees adopted Amendment 24. The letter analyzes a

---

[4] The complaints incorrectly assert that the Rehabilitation Period began on August 1, 2009.

hypothetical $2.00 hourly withholding on all employer contributions, analogous to the $1.00 hourly withholding in Amendment 14. Thus, the use of "rehabilitation plan" in the letter appears to refer to Amendment 14, not Amendment 24, and we are not persuaded that the complaints' reference to the letter put the Trustees on notice that Amendment 24 was at issue.

In sum, the complaints only made four vague references to Amendment 24's Rehabilitation Plan; two of these references imply that the Trustees had the authority to withhold $1.00 on contributions *less than $3.00 per hour* under the Rehabilitation Plan and arguably imply that all withholdings made pursuant to Amendment 24 were permissible. The complaints make no mention of the withholding of increased employer contributions under the Rehabilitation Plan's default and alternative schedules. The complaints did not satisfy Rule 8's liberal pleading requirements because: (1) they did not refer to the class's claims under Amendment 24 nor explain the basis of these claims; and (2) they included statements implying that withholdings made pursuant to Amendment 24's Rehabilitation Plan were permissible. Lehman was not subjected to any withholdings under Amendment 24, and the class never sought to amend the complaint to describe the withholding of increased employer contributions made pursuant to the Rehabilitation Plan. On this record, we agree with the Trustees that the complaints did not provide adequate notice that the plaintiffs sought to recover contributions withheld under Amendment 24, particularly the withholding of increased employer contributions under the default and alternative schedules in the Rehabilitation Plan.

*B. Summary Judgment Briefing*

The district court concluded that the parties fully addressed withholdings under Amendments 14 and 24 in their summary judgment briefs, but again we respectfully disagree. Although the summary judgment briefs mentioned Amendment 24, they did not analyze the withholding of increased employer contributions under the actual Rehabilitation Plan. Instead, they continued to focus on the $1.00 hourly withholding in Amendment 14 and continued to suggest that the Trustees had the authority to withhold contributions under Amendment 24.

The statement of the issues in Lehman's motion for summary judgment characterized the first two issues in the case as: (1) "Does withholding a $1.00 per hour administrative fee from transfer contributions violate Article 5 of the Pension Plan?" and (2) "Does the Defendants' complete failure to count the non-transferred $1.00 per hour contribution as a benefit accrual violate ERISA?" The statement of facts in the summary judgment motion again focused on Lehman and the $1.00 hourly withholding made pursuant to Amendment 14. The argument section of the motion devotes three pages to analyzing why the $1.00 hourly withholding in Amendment 14 violates Article 5 of the Pension Plan before turning to Amendment 24.

With respect to Amendment 24, the motion for summary judgment quotes the provision that establishes both the $1.00 hourly withholding for contribution rates less than $3.00 per hour and the withholding of all increased employer contributions under the default and alternative schedules in the Rehabilitation Plan. But then the motion offers three reasons why this provision in Amendment 24 "does not

authorize a dollar per hour contribution to the Pacific Coast Fund," and the first reason is that "Mr. Lehman's and other similarly situated Plaintiffs' contributions were in excess of $3.00 per hour and, therefore, the $1.00 per hour provision does not apply." This argument echoes the allegation in the complaints that the "Trustees wrongfully withheld $1.00 on contribution rates of $3.00 or more." It *distinguishes* Lehman from other travelers who received contributions less than $3.00 per hour and were subject to the $1.00 hourly withholding in Amendment 24's Rehabilitation Plan, suggesting that such travelers were *not* part of the proposed class at the summary judgment stage.[5]

The next section of the summary judgment motion is titled, "Defendants Violated ERISA Sections 305 and 204 by Providing No Benefit to Travelers With Respect to the $1.00 Deductions From Reciprocity Contributions," and repeatedly refers to the $1.00 hourly withholding. In short, the motion for summary judgment does not make any arguments about the withholding of increased employer contributions, and the motion's arguments about Amendment 24 suggest that Lehman was not one of the other travelers who received contribution rates less than $3.00 per hour and were subject to withholdings under Amendment 24's Rehabilitation Plan.

The Trustees did not specifically respond to Lehman's arguments about Amendment 24 in their opposition to the summary judgment motion. Instead, they argued generally that the Trustees had the authority to amend the Pension Plan, that the Reciprocal Agreement did not limit their authority,

---

[5] The other two reasons offered to support the argument that Amendment 24 does not authorize the $1.00 hourly withholding do not shed light on the scope of withholdings litigated.

and that the Trustees exercised this authority by enacting Amendment 14. They maintained that the $1.00 hourly withholding did not violate ERISA sections 204 and 305 because travelers continued to accrue benefits in their home pension plans. Because the Trustees did not address Lehman's arguments about Amendment 24 in their opposition, Lehman did not discuss the Rehabilitation Plan in his reply brief.

### C. Summary Judgment Order

The district court's summary judgment order likewise focused on the $1.00 hourly withholding in Amendment 14, and did not discuss the withholding of increased employer contributions under Amendment 24. The order characterized the parties' arguments as follows: "Plaintiff contends that Defendants violated Article 5 of the Pension Plan by subjecting reciprocity transfers to a $1.00/hour withholding. Defendants deny that they violated the Plan. Rather, they assert that they amended the Plan to allow for the withholdings through Amendment No. 14." The district court then went on to analyze the relationship between Article 5 of the Pension Plan—which requires the Pacific Coast Fund to transfer all contributions received on behalf of travelers to their home funds—and Amendment 14 in detail.

Under the heading "Effect of Amendment No. 14," the district court ruled that Amendment 14 "is ambiguous with respect to whether it applies to reciprocal transfers out of as well as into the Plan, and that such ambiguity must be interpreted so as to avoid rendering nugatory other Plan provisions or conflicting with ERISA." Amendment 14 states:

> Notwithstanding the foregoing or any other
> provision of the Plan to the contrary effective
> July 1, 2008, the first one dollar ($1.00) of
> required contribution for each and every Hour
> of Covered Work on and after July 1, 2008,
> shall not result in any monthly benefit accrual
> and shall be utilized solely to improve the
> funding of the Plan. The same reduction is
> applicable for required Contributions pursuant
> to subscription agreements and reciprocal
> transfers for each and every hour on and after
> July 1, 2008. . . .

The district court emphasized that the Pension Plan does not
define "reciprocal transfers," and "[t]o the extent that
Amendment 14 applies solely to transfers into the Pension
Plan when it operates as an Employee's Home Fund, it
neither conflicts with Article 5 of the Plan nor with the terms
of the Reciprocity Agreement incorporated into it." The court
noted that applying Amendment 14 to transfers out of the
Pension Plan would conflict with section 5.04 of the Pension
Plan and with "Article 16 of the Rehabilitation Plan, which
only allows for withholding on reciprocal transfers out of the
Plan for contribution rates less than $3.00 per hour." Thus,
the district court concluded that the Trustees abused their
discretion by interpreting Amendment 14 to authorize a $1.00
hourly withholding on travelers like Lehman, who request
transfers of employer contributions out of the Pacific Coast
Fund.

The district court's reasoning with respect to the
ambiguity of Amendment 14 does not apply to Amendment
24. Amendment 24's withholdings explicitly apply to
travelers "who work inside the jurisdiction of this Fund and

who have employer contributions sent to an outside fund under a 'money follows the man' reciprocity agreement." The summary judgment order relied on Amendment 24's clarity when it found that Amendment 14's $1.00 hourly withholding (on all contributions) would conflict with Amendment 24's $1.00 hourly withholding (on contribution rates less than $3.00 per hour) if Amendment 14 applied to transfers out of the Pacific Coast Fund. The court's order did not analyze whether the Trustees abused their discretion by interpreting Amendment 24 to apply to reciprocal transfers out of the Pension Plan or otherwise address the conflict between Article 5 and Amendment 24.

In the alternative, and still under the "Effect of Amendment No. 14" heading, the district court ruled that "an Amendment allowing for withholding of outgoing reciprocity transfers would be subject to reformation" because it would violate ERISA section 305. The district court referred to "the Amendment" throughout its discussion of ERISA section 305, suggesting that it was only addressing Amendment 14.

### D. Stipulated Class Definition

On appeal, the class argues that the Trustees knew Amendment 24 was at issue because the stipulated class definition is "unrestricted as to time period" and refers to contributions withheld from July 1, 2008 to present. The class correctly asserts that this time period includes withholdings under the Rehabilitation Plan in Amendment 24, adopted on July 8, 2009. But this argument ignores the fact that the Trustees did not immediately cease withholdings under Amendment 14 after adopting Amendment 24. Instead, Amendment 24's withholding rates are triggered at varying times depending on when each respective collective

bargaining agreement expires. The required increases in employer contributions and corresponding withholdings in the Rehabilitation Plan's default schedule take effect 180 days after the collective bargaining agreements in effect on April 1, 2009 expire, unless the parties negotiate and implement one of the Rehabilitation Plan's alternative schedules sooner. At oral argument, the Trustees explained that some travelers were still subject to withholdings under Amendment 14 as of the date of class certification because their collective bargaining agreements had not yet expired. Therefore, the fact that the complaints and stipulated class definition refer to contributions withheld from July 1, 2008 to present does not demonstrate that the parties litigated withholdings under Amendment 24.

Because the class raised the issue of contributions withheld under Amendment 24's Rehabilitation Plan for the first time in their second motion to enforce or clarify the district court's summary judgment order, and the district court's order did not analyze whether the Trustees abused their discretion by interpreting Amendment 24 to apply to contributions transferred out of the Pacific Coast Fund, the district court erred by awarding damages for withholdings under the Rehabilitation Plan. We vacate the damages award with respect to withholdings under Amendment 24 because the Trustees did not have notice that those withholdings were at issue nor an opportunity to respond.

At oral argument, the Trustees explained that with proper notice they would have argued that travelers are not entitled to the required increases in employer contributions in the default and alternative schedules under Amendment 24's Rehabilitation Plan because the Pension Protection Act of 2006 required the Trustees to increase employer contributions

once the Fund entered critical status, and the increased contributions would be analogous to surcharge payments under the Act. The class does not maintain that they are entitled to the surcharge payments withheld under Amendment 24, and the district court did not wrestle with the interaction between the Pension Protection Act's requirements, which are aimed at shoring up plans that enter critical status, and Amendment 24, which purports to increase the "pass through" employer contributions for travelers. We therefore remand to the district court for further proceedings consistent with this opinion.

## II. The District Court Correctly Interpreted the Interaction Between Amendment 14, Article 5 of the Pension Plan, and the Reciprocal Agreement

The Trustees also argue that the district court erred by granting summary judgment to Lehman and awarding damages to the class for the $1.00 hourly withholding under Amendment 14. More specifically, the Trustees maintain that the district court erred by not incorporating the entire Reciprocal Agreement into the Pension Plan, by deferring to the Reciprocal Administrator's opinion concerning the Trustees administration of the Reciprocal Agreement, and by allowing the plaintiffs to enforce the terms of the Reciprocal Agreement.

"Where an ERISA Plan grants discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a plan administrator's interpretation of a plan is reviewed for abuse of discretion." *Tapley v. Locals 302 & 612 of Int'l Union of Operating Eng'rs-Emp'rs Constr. Indus. Ret. Plan*, 728 F.3d 1134, 1139 (9th Cir. 2013) (citations and internal quotation marks omitted). We review the district

court's application of this standard and the district court's grant of summary judgment de novo. *See id.*; *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997).

Here, the Pension Plan grants the Trustees discretionary authority to interpret the Plan. The class contends that we should review the Trustees' interpretation of Amendment 14 de novo because the Trustees never responded to Lehman's claim for benefits, but the class does not cite any Ninth Circuit authority for this proposition. We need not resolve whether abuse-of-discretion or de novo review applies because the Trustees' arguments in support of their interpretation of Amendment 14 fail even under the deferential abuse-of-discretion standard.

A. *The Trustees Abused Their Discretion by Interpreting Amendment 14 to Apply to Outgoing Reciprocity Transfers*

The parties agree that Article 5 of the Pension Plan incorporates the entire Reciprocal Agreement into the Plan. The Trustees maintain that the district court selectively incorporated sections 12 and 27(a) of the Reciprocal Agreement into the Pension Plan, which led the district court to erroneously conclude that the Trustees' interpretation of Amendment 14 conflicted with Article 5 and the Reciprocal Agreement.[6] The Trustees concede that they could not

---

[6] Section 12 of the Reciprocal Agreement contains the requirement that participating funds transfer an amount equal to all contributions received on behalf of a traveler to his or her designated home fund without charging any fees. Section 27(a) states that the Reciprocal Agreement

construe Amendment 14 "in a way that clearly conflicts with the plain language of the Plan, renders nugatory other provisions of the Plan, or lacks any rational nexus to the primary purpose of the Plan." *Tapley*, 728 F.3d at 1140 (citations and internal quotation marks omitted); *see also Richardson*, 112 F.3d at 985. But the Trustees argue that the district court failed to incorporate section 1(g) of the Reciprocal Agreement, which allegedly demonstrates that Amendment 14 does not conflict with Article 5 of the Plan.

Section 1(g) of the Reciprocal Agreement defines "contributions" as "[t]he payment which an employer is duly required to make by the terms of a collective bargaining agreement, or is otherwise legally bound, to make to a Participating Fund party hereto for the purpose of providing a plan of benefits for Temporary or Permanent employees." According to the Trustees, the $1.00 hourly withholding in Amendment 14 is not a "contribution" under the Reciprocal Agreement because it is "not used to provide a plan of benefits for employees." Amendment 14 specified that the withholding would be "utilized solely to improve the funding of the Plan." Thus, the Trustees maintain that they are not required to transfer the $1.00 hourly withholding to travelers' home pension funds under Article 5 because the withholding does not meet the definition of "contributions" in the Reciprocal Agreement.

The Trustees' argument is inconsistent with the Pension Plan's own definition of a "contribution" and ERISA's purpose. Section 1.04 of the Pension Plan defines "contribution" as "the payment made or to be made to the

"may be amended at any time by the written approval of a proposed amendment by a simple majority of all Participating Funds."

Fund by any individual employer under the provisions of a collective bargaining agreement." This definition does not limit "contributions" to mean only payments used by the Pacific Coast Fund for a specific objective. The Trustees do not dispute that the $1.00 hourly withholding in Amendment 14 is a payment made by an employer under the terms of a collective bargaining agreement.

Further, ERISA's purpose is "to protect plan participants and beneficiaries." *Boggs v. Boggs*, 520 U.S. 833, 845 (1997). To that end, ERISA mandates that the assets of a plan "shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). When read in the context of the Pension Plan and ERISA, the Reciprocal Agreement's definition of "contributions" does not support the Trustees' interpretation of Amendment 14. The district court correctly determined that the Trustees' interpretation would conflict with and render nugatory section 5.04 of the Pension Plan. Because Amendment 14 can be read consistently with Article 5 if it only applies to transfers into the Pacific Coast Fund and does not apply to the "pass through" payments transferred out of the Pacific Coast Fund to the travelers' home funds, we affirm the district court's orders granting summary judgment to Lehman and awarding damages to the class for all contributions withheld under Amendment 14.

### B. *The District Court Did Not Defer to the Reciprocal Administrator*

Next, the Trustees argue that the district court erred by deferring to the Reciprocal Administrator's opinion about the Trustees' administration of the Pension Plan. Section 5 of the

Reciprocal Agreement states that "neither the Reciprocal Administrative Office nor the Reciprocal Administrator shall have any discretionary authority, control or responsibility over (i) the management, administration, or assets of any Participating Fund, or (ii) the administration of the Agreement by any Participating Fund." The Trustees' argument fails because the district court did not defer to the Administrator.

Instead, the district court noted that the Trustees' interpretation of Amendment 14 is problematic because it would subject travelers to double taxation. Counsel for the Reciprocal Administrator explained in a letter to the Trustees that if Amendment 14 applies to travelers who temporarily work in the Pacific Coast Fund's jurisdiction, then both the Pacific Coast Fund and the travelers' home funds may impose withholdings on employer contributions to improve the funding condition of the respective plans. The district court agreed with counsel for the Reciprocal Administrator that "the participating fund merely acts as a conduit for money transferred to the correct fund," and concluded that "[r]estricting participating funds to impose withholdings only on reciprocity contributions transferred in prevents such double taxation while still allowing participating funds to protect their financial integrity." The district court did not defer to the Reciprocal Administrator by agreeing with the concern about double taxation.

### C. The Class Sued to Enforce the Pension Plan, Not the Reciprocal Agreement

Finally, the Trustees maintain that the district court erred by ruling that the class could enforce the terms of the Reciprocal Agreement. The Trustees emphasize that the

plaintiffs' home pension funds did not follow the dispute-resolution procedures outlined in the Reciprocal Agreement and the Agreement does not grant the plaintiffs the right to enforce its terms against the Trustees.

Section 31 of the Reciprocal Agreement states:

> Any dispute, disagreement or question between the Participating Funds arising out of this Agreement shall first be referred to the Reciprocal Administrative Office and notice shall be given to any other parties to the dispute. The Participating Fund giving such notices must mail the notice within 180 days of the cause of the dispute, disagreement or question arising out of the Agreement. . . . If the dispute is not satisfactorily resolved within sixty (60) days from the time notice thereof shall have been given to all parties, it may be submitted to an arbitrator, if requested in writing by either party, for binding determination. . . . The award of the arbitrator shall be final, binding, and conclusive upon the parties to the dispute and it may be enforced in any court of competent jurisdiction. The arbitrator shall not have the authority to modify or amend this Agreement.

Section 33 adds that "[n]othing in this Agreement, express or implied, is intended to confer on any person not signatory hereto any right to bring any claim, action or proceeding arising in, or by reason of, this Agreement." Only pension fund trustees are signatories to the Reciprocal Agreement.

The plaintiffs concede that their home pension funds did not provide notice of a dispute under section 31 and that they do not have the right to enforce the Reciprocal Agreement under section 33. But contrary to the Trustees' argument, the district court did not determine that the plaintiffs could enforce the terms of the Reciprocal Agreement as a stand-alone contract. Rather, the district court ruled that the plaintiffs could "enforce the terms of the Pension Plan, which in turn incorporates aspects of the [Reciprocal Agreement]." Nothing in the Reciprocal Agreement changes the plaintiffs' rights to enforce the terms of the Pension Plan under ERISA section 502(a)(1)(B). *See* 29 U.S.C. § 1132(a)(1)(B). Therefore, the plaintiffs have the right to enforce Article 5 of the Pension Plan, which incorporates the Reciprocal Agreement.

## III.   The District Court's Alternative Holding Regarding ERISA Section 305

The Trustees also argue that the district court ignored the plain language of ERISA section 305(e) in its orders granting Lehman's motion for summary judgment and the plaintiffs' motion to enforce or clarify the summary judgment order. The Trustees maintain that the district court erred: (1) by applying ERISA section 305(e) to Amendment 14; and (2) by ruling that all withholdings violated ERISA section 305 without considering whether the withholdings took place under the alternative schedules in Amendment 24's Rehabilitation Plan.

*A. ERISA Section 305(e) Does Not Apply Before Critical Status Certification*

The district court ruled in the alternative that the Trustees abused their discretion by interpreting Amendment 14 to apply to travelers who work in the Fund's jurisdiction on a temporary basis because "the Plan so amended would violate Section 305 of ERISA, which prevents Plans from adopting default schedules that would entirely eliminate future accruals." The district court explained that "ERISA Section 305(e)(6)(A) provides a statutory floor on the rate of future benefit accruals under a rehabilitation plan default schedule equal to 1% of the contributions made on the participant's behalf." *See* 29 U.S.C. § 1085(e)(6)(A). The Trustees contend that ERISA section 305(e) does not apply to Amendment 14 because the Trustees adopted the amendment before the Pension Plan's actuary certified that the Plan was in "critical status," and Amendment 14 is not a default schedule subject to the requirements of section 305(e).

Pursuant to the Pension Protection Act of 2006, ERISA section 305(b)(3) requires plan actuaries for multiemployer plans to annually certify "whether or not the plan is or will be in critical status for such plan year or for any of the succeeding 5 plan years" within ninety days of the start of the plan year. 29 U.S.C. § 1085(b)(3)(A)(i). If the plan is in critical status, ERISA section 305(a)(2)(A) requires the plan sponsor to "adopt and implement a rehabilitation plan in accordance with the requirements of subsection (e) of this section." *Id.* § 1085(a)(2)(A). ERISA section 305(e)(1)(A) explains that the plan sponsor must adopt a rehabilitation plan no "later than 240 days following the required date for the actuarial certification of critical status." *Id.* § 1085(e)(1)(A). Thus, the Trustees are correct that critical status certification

is the statutory trigger for the requirement to develop a rehabilitation plan. While ERISA section 305 creates a deadline by which plan sponsors must adopt a rehabilitation plan, it does not prohibit plan sponsors from taking action before "critical status" certification.

Here, the Trustees enacted Amendment 14 in May 2008 "based on a report from the Plan's actuary that stated the Plan's funding levels were getting perilously close to critical status level under the Pension Protection Act of 2006." On June 29, 2009, the Pacific Coast Fund's actuary certified that the Pension Plan was in critical status for the plan year beginning April 1, 2009. Shortly thereafter, the Trustees adopted Amendment 24, which contained the formal Rehabilitation Plan and default and alternative schedules. Because certification is the statutory trigger for ERISA section 305's rehabilitation plan requirement, the district court erred by describing Amendment 14 as a "default schedule" and applying section 305 to Amendment 14.[7]

### B. Withholdings Under Alternative Schedules in the Rehabilitation Plan

Next, the Trustees argue that the district court erred by failing to make a finding with respect to whether any of the class members worked under the default or alternative schedules in the Rehabilitation Plan before awarding damages for withholdings under Amendment 24. The Trustees maintain that ERISA section 305(e)(6) allows the Trustees to

---

[7] We do not reach whether ERISA section 204 establishes minimum benefit-accrual standards that apply to Amendment 14, *see* 29 U.S.C. § 1054, because we affirm the district court's ruling with respect to Amendment 14 on other grounds.

adopt "alternative schedules to the default schedule that establish lower or higher accrual and contribution rates" than the statutory minimums otherwise described in section 305(e)(6). *See* 29 U.S.C. § 1085(e)(6)(B). The plaintiffs concede that the Trustees' interpretation of section 305(e)(6) is correct, but argue that ERISA section 204 provides minimum accrual requirements for the alternative schedules in Amendment 24's Rehabilitation Plan.

Because we hold that the parties did not fully litigate withholdings under Amendment 24, we need not address whether the district court erred by failing to make specific findings about the alternative schedules in the Rehabilitation Plan. If the district court determines on remand that the plaintiffs are entitled to the transfer of all contributions withheld under Amendment 24 based on the terms of the Pension Plan, as it did with respect to Amendment 14, then it need not determine whether the default and alternative schedules in the Rehabilitation Plan violated ERISA's minimum accrual requirements.

## IV.    Cross-Appeal: Alternative Relief Under ERISA Sections 502(a)(2) and (a)(3)

On cross-appeal, the class argues that if the court determines that the Pacific Coast Fund is not required to transfer all withheld reciprocity contributions to the travelers' home funds under ERISA section 502(a)(1)(B), then the class members are entitled to a benefit accrual for any withheld contributions under ERISA sections 204, 305, and 502(a)(2). The class further maintains that if the court determines that the Pension Plan requires the Fund to transfer the withheld contributions, but not the earnings thereon, then the class members are entitled to the earnings pursuant to ERISA

section 502(a)(3). The Trustees concede that if the class members are entitled to a transfer of the withheld contributions, they are also entitled to the earnings thereon. Because we affirm the district court's award of damages for withholdings under Amendment 14 pursuant to ERISA section 502(a)(1)(B) and we remand for further proceedings on the withholdings under Amendment 24, we do not reach whether the class would otherwise be entitled to benefits accrual under ERISA sections 204, 305, and 502(a)(2).

## V. Attorneys' Fees

The plaintiffs separately appeal the district court's award of attorneys' fees. The plaintiffs contest only the district court's determination of a reasonable hourly rate. Because we reverse the district court's order awarding damages with respect to Amendment 24, we also vacate the attorneys' fees award.[8]

## CONCLUSION

We vacate the damages award for withholdings under Amendment 24's formal Rehabilitation Plan because the complaints did not provide adequate notice to the Trustees that Amendment 24 was at issue. We affirm: (1) the district court's ruling that the Trustees abused their discretion by interpreting Amendment 14 to conflict with Article 5 of the Pension Plan; (2) the award of damages for the $1.00 hourly

---

[8] To provide clarity on remand, we note that the district court did not abuse its discretion by ruling that the relevant legal community for purposes of calculating the fee award was the Western District of Washington because that is the forum in which the district court sits. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013).

withholding in Amendment 14 pursuant to ERISA section 502(a)(1)(B); and (3) the district court's ruling that the plaintiffs have the right to enforce the Pension Plan's terms, including the provisions that incorporate the Reciprocal Agreement. We decline to reach the issues on cross-appeal, vacate the attorneys' fees award, and remand for further proceedings consistent with this opinion.

Each party shall bear its own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**