**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 23-1733**

───────────

J.H., by and through their Guardian Ad Litem, Erica Chambers; E.H., by and through their Guardian Ad Litem, Erica Chambers; ERICA CHAMBERS, individually,

　　　　　　Plaintiff - Appellees,

　　　v.

HARFORD MUTUAL INSURANCE GROUP, INC.,

　　　　　　Defendant - Appellant.

───────────

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Thomas D. Schroeder, District Judge.  (1:21-cv-00856-LPA)

───────────

Argued:  March 18, 2025　　　　　　　　　　　　Decided:  August 8, 2025

───────────

Before HEYTENS and BERNER, Circuit Judges, and John A. GIBNEY, JR., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

───────────

Affirmed by unpublished per curiam opinion.

───────────

**ARGUED:**  William A. Bulfer, Asheville, North Carolina, Daniel Thomas Strong, TEAGUE CAMPBELL DENNIS & GORHAM, LLP, Raleigh, North Carolina, for Appellants.  Coleman Cowan, LAW OFFICES OF JAMES SCOTT FARRIN, Durham, North Carolina, for Appellees.  **ON BRIEF:**  Kaitelyn E. Fudge, LAW OFFICES OF JAMES SCOTT FARRIN, Durham, North Carolina, for Appellees.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Erica Chambers was driving with her two minor children on the highway in North Carolina when they were hit by a truck owned by Big Boss Construction, Inc. After bringing suit against Big Boss and several other parties involved in the accident, Chambers filed a declaratory judgment action to establish that Big Boss's $2 million commercial excess insurance policy—issued by Harford Mutual Insurance Group, Inc.—provided coverage for the accident. The district court sided with Chambers and concluded that the accident fell within the scope of the policy's coverage. The district court further determined that Chambers and her children were entitled to pre- and post-judgment interest under the policy. We affirm both rulings.

## I.    Background[1]

On October 27, 2018, Erica Chambers and her children were severely injured in an automobile accident as they drove south on North Carolina Highway 49.  A truck owned by Big Boss Construction, Inc. crossed the center of the highway and struck Chambers head on. The driver of the truck was unauthorized to operate a motor vehicle, as he lacked a valid driver's license. The parties agree that at the time of the accident, the driver was an agent of Big Boss acting within the scope of his employment. The driver was on his way

---

[1] In the litigation agreement discussed *infra*, the parties "agree[d] that all facts and conclusions of law pled in the Second Amended Complaint in the Underlying Litigation are deemed admitted" for the purpose of this declaratory judgment action. J.A. 207. We thus recite the facts as alleged in that complaint.

2

to complete a job for a different company, NC Champions Construction, Inc., which was using the truck with Big Boss's permission.

Chambers and her children incurred astronomical medical bills as a result of the accident. Chambers spent 34 days in the hospital recovering from broken bones throughout her body. She endured multiple surgeries and remains under medical care for her injuries, some of which are permanent. One of Chambers's children suffered a head injury and continues to experience memory problems. Her other child suffered a broken leg. In total, the family's medical bills have exceeded $500,000.

Chambers and her children (collectively, Chambers[2]) filed suit in North Carolina state court against the driver, Big Boss, and NC Champions. The suit alleged, among other claims, that Big Boss was liable for negligently entrusting its truck to the driver.

At the time of the accident, Big Boss carried multiple insurance policies, including a commercial excess umbrella policy (the Excess Policy) issued by Harford Mutual Insurance Group, Inc. The Excess Policy had a liability limit of $2 million. It covered certain bodily injury and property-related losses exceeding the limits of Big Boss's other underlying insurance policies. Because the recovery on Big Boss's underlying auto insurance policy was capped at $100,000 per accident, Big Boss submitted a claim for coverage under the Excess Policy. Harford denied that claim, asserting that the accident was not covered by the policy.

---

[2] Chambers filed suit on behalf of herself and her minor children.

3

Following Harford's denial of Big Boss's coverage claim, Chambers initiated a declaratory judgment action in North Carolina state court "seeking a declaration that coverage for the damages alleged in the [underlying lawsuit] exists under . . . [the Excess Policy]." J.A. 565. The declaratory judgment action also sought a coverage determination regarding another Harford insurance policy (the Second Policy) not at issue in this appeal. Harford, which is based in Maryland, invoked diversity jurisdiction and removed the case to federal court.

While the declaratory judgment action was still pending in federal court, the parties reached an agreement (the Litigation Agreement) to settle the underlying state court litigation. Though the Litigation Agreement resolved the state court claims, it did not moot the declaratory judgment action. Rather, the purpose of the Litigation Agreement was to "allow [Chambers] . . . to pursue the merits of the insurance coverage issues in the [declaratory judgment action]" without additional lingering issues complicating the litigation. J.A. 207.

The Litigation Agreement provided for Chambers to receive $200,000 upfront, $25,000 of which would be contributed by Harford. Any additional payments, however, would depend on the outcome of the declaratory judgment action. If the court determined that the Excess Policy covered the accident, Chambers would receive an additional $2 million from Harford. If the court determined that the Second Policy also provided coverage, Chambers would receive another $1 million from Harford. Further, the parties attached to the Settlement Agreement a "Consent Judgment" establishing that Chambers would be entitled to $3.2 million if they did not timely receive the $200,000 upfront.

4

After signing the Litigation Agreement, Chambers and Harford filed cross-motions for judgment on the pleadings in the declaratory judgment action. The critical issue raised in those motions was whether the Excess Policy covers accident-related losses resulting from negligent entrustment of an automobile. Harford does not dispute that negligent entrustment occurred, only whether it is covered by the Excess Policy.

Though the Excess Policy generally covers liability for accidents resulting in bodily injuries, it contains several exclusions that carve out certain incidents from coverage. One such exclusion, the Automobile Exclusion, provides that the Excess Policy "shall not apply to any liability for bodily injury . . . arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile." J.A. 186. The Automobile Exclusion does not expressly address claims of negligent entrustment. The Excess Policy contains a parallel exclusion governing aircraft and watercraft accidents (the Aircraft/Watercraft Exclusion). That exclusion specifically forecloses coverage for negligent entrustment claims relating to aircraft and watercraft accidents. The Aircraft/Watercraft Exclusion states that the Excess Policy does not apply to injuries "arising out of the ownership, maintenance, operation, use, loading or unloading *or entrustment to others* of any aircraft, unmanned aircraft, or watercraft." J.A. 167 (emphasis added).

Relying on this difference between the Automobile Exclusion and the Aircraft/Watercraft Exclusion, the district court determined that the Automobile Exclusion—unlike the Aircraft/Watercraft Exclusion—was not intended to encompass claims for negligent entrustment. Thus, the district court concluded that the Excess Policy

5

provided coverage for the injury-related losses sustained in Chambers's accident, and it granted Chambers's motion for judgment on the pleadings.

Upon determining that the Excess Policy provided coverage for the accident, the district court asked the parties to submit additional briefing addressing whether Chambers was entitled to pre- and post-judgment interest on the $2 million award. In arguing that it did not owe interest, Harford pointed to a provision in the Litigation Agreement stating that "in no event shall the Harford Insurers be obligated to tender more than . . . $2,000,000 under the [Excess Policy]." J.A. 209. Chambers, however, highlighted a different provision in the Litigation Agreement stating that "[Harford] specifically agree[s] that this [Litigation Agreement] . . . *in no way relieve[s] [Harford] of any obligation to pay money under the policies*, in the event that the Court determines that the policy or policies provide coverage." J.A. 209 (emphasis added). The Excess Policy further states that the insured shall be indemnified for "*pre-judgment interest* awarded against the [i]nsured on that part of any judgment covered under this policy," and "*all interest earned* on that part of any judgment . . . *after* entry of the judgment and before we have indemnified the insured, offered to indemnify, or deposited in court" the monies for the judgment. J.A. 148 (emphasis added). Further, the Excess Policy expressly states that interest payments under these provisions "will not reduce" the limit of the insurance policy—i.e., $2 million. J.A. 148.

After analyzing these separate provisions of the Litigation Agreement and the Excess Policy, the district court concluded that Harford was obligated to pay pre- and post-judgment interest to Chambers. Harford filed this appeal challenging the district court's

determinations that 1) the Excess Policy covered the accident, and 2) Harford owed interest to Chambers.

## II.      Standard of Review

We review *de novo* a district court's grant of a motion for judgment on the pleadings. *Bakery & Confectionary Union v. Just Born II, Inc.*, 888 F.3d 696, 701 (4th Cir. 2018). Where parties file cross-motions for judgment on the pleadings, we consider each motion separately and review the pleadings in the light most favorable to the party opposing that motion. *See Mercury Sys., Inc. v. S'holder Representative Servs., LLC*, 820 F.3d 46, 51 (1st Cir. 2016); *Reprod. Health Servs. v. Strange*, 3 F.4th 1240, 1257 (11th Cir. 2021) (citing Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 1370 (3d ed. 2004 & Supp. 2019). Here we review only the grant of Chambers's motion for judgment on the pleadings. Thus, we evaluate the pleadings in the light most favorable to Harford. Because the parties have agreed that "all facts and conclusions of law" pled in Chambers's Second Amended Complaint are deemed admitted, J.A. 207, we accept those facts as true and draw all reasonable factual inferences in Harford's favor. *See Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002) (citation omitted).

## III.      Analysis

### a.  The Excess Policy Covered the Accident

We begin by analyzing the district court's determination that the accident was covered by the Excess Policy. North Carolina rules of contract interpretation dictate that

7

Harford cannot successfully challenge the district court's coverage determination unless it demonstrates that the Excess Policy, read as a whole, unambiguously excludes coverage of the accident. Under North Carolina law, the burden is generally on the insured to demonstrate coverage. *Nationwide Mut. Ins. Co. v. McAbee*, 150 S.E.2d 496, 497 (N.C. 1966). "If the insurer relies on a clause of the policy which excludes coverage," however, "the burden is on the insurer to establish the exclusion." *Id.*; *see also Jenkins v. Aetna Cas. & Sur. Co.*, 378 S.E.2d 773, 776 (N.C. 1989).

Harford relies on the Automobile Exclusion, a clause of the Excess Policy that excludes coverage. North Carolina courts construe exclusion provisions by applying "the rule that provisions which exclude liability of insurance companies are not favored and therefore *all ambiguous provisions will be construed against the insurer* and in favor of the insured." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 350 S.E.2d 66, 68 (N.C. 1986) (emphasis added). "The test in construing the language of the contract (an insurance policy) is not what the insurer intended the words to mean, but what a reasonable person in the position of the insured would have understood them to mean." *Marriott Fin. Servs., Inc. v. Capitol Funds, Inc.*, 217 S.E.2d 551, 565 (N.C. 1975).

Recognizing that any ambiguity in the Excess Policy is fatal to its coverage argument, Harford asserts that the district erroneously looked to irrelevant provisions of the Excess Policy to "create an ambiguity." Harford Opening Br. at 30. Harford contends that the Automobile Exclusion, read in isolation, is "unambiguous and clearly applies to exclude coverage" for negligent entrustment of an automobile. *Id.* According to Harford, a court may not look to other sections of an insurance policy to construe the meaning of a

particular provision that is unambiguous when read in isolation. Harford argues that the district court thus erred by relying on the Aircraft/Watercraft exclusion to inform its reading of the Automobile Exclusion.

Harford urges us to employ a method of contract interpretation that is flatly inconsistent with North Carolina precedent. Though Harford asserts that we must read the Automobile Exclusion in isolation, the North Carolina Supreme Court has repeatedly emphasized that insurance policies must be construed as a whole. *E.g.*, *Ocean Accident & Guarantee Corp. v. Piedmont Ry. & Elec. Co.*, 102 S.E. 636, 637 (N.C. 1920) ("We are required, in construing this policy, to examine the entire writing, and to base our conclusion as to its meaning upon the contract as a whole."); *Stanback v. Winston Mut. Life Ins. Co.*, 17 S.E.2d 666, 669 (N.C. 1941) ("In determining the intention of the parties to an insurance policy, the policy should be considered and construed as a whole . . . ." (citation omitted)); *DeMent v. Nationwide Mut. Ins. Co.*, 544 S.E.2d 797, 800 (N.C. 2001) ("Since the objective of construing an insurance policy is to ascertain the intent of the parties, the courts should resist piecemeal constructions and should, instead, examine each provision in the context of the policy as a whole.").

In arguing for the opposite rule, Harford relies, unconvincingly, on a passage of *Wachovia Bank & Trust Company v. Westchester Fire Insurance Company* in which the North Carolina Supreme Court stated that "[w]here the immediate context in which words are used is not clearly indicative of the meaning intended, resort may be had to other portions of the policy and all clauses of it are to be construed, if possible, so as to bring them into harmony." 172 S.E.2d 518, 522 (N.C. 1970). Harford asserts that the negative

9

implication of this statement is that courts *may not* consider other portions of the policy *unless* the immediate context is unclear. Yet subsequent cases of the North Carolina Supreme Court, including those citing *Wachovia*, foreclose this strained reading. *E.g.*, *State v. Philip Morris USA Inc.*, 685 S.E.2d 85, 90 (N.C. 2009) ("Since the object of construction is to ascertain the intent of the parties, the contract must be considered as an entirety. The problem is not what the separate parts mean, but what the contract means when considered as a whole."); *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 658 S.E.2d 918, 921 (N.C. 2008) ("The court must construe the contract as a whole and an indemnity provision must be appraised *in relation to all other provisions*." (citations omitted) (emphasis added)); *Christenbury Eye Ctr. v. Medflow, Inc.*, 802 S.E.2d 888, 892 (N.C. 2017) ("In interpreting contracts, we construe them as a whole." (citation omitted)).

Construing the Excess Policy as a whole, as we must, we conclude that it does not unambiguously exclude coverage for negligent entrustment of an automobile. The Aircraft/Watercraft Exclusion explicitly states that the policy does not apply to injuries "arising out of the ownership, maintenance, operation, use, loading or unloading or *entrustment to others* of any aircraft, unmanned aircraft, or watercraft." J.A. 167 (emphasis added). Yet the Automobile Exclusion, which otherwise contains parallel language, makes no mention of negligent entrustment. Instead, it merely states that the Excess Policy "shall not apply to any liability for bodily injury . . . arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile." J.A. 186. To conclude that the Automobile Exclusion implicitly encompasses negligent entrustment claims would render superfluous the words "entrustment to others" in the Aircraft/Watercraft exclusion. This

10

reading would contravene bedrock principles of North Carolina contract interpretation. In *Wachovia*, one of the cases upon which Harford most heavily relies, the North Carolina Supreme Court instructed that "[e]ach word" of an insurance policy "is deemed to have been put into the policy for a purpose and will be given effect, if that can be done by any reasonable construction." *Wachovia*, 172 S.E.2d at 522. We cannot ignore that command.

Because the Excess Policy is ambiguous regarding whether it covers claims of negligent entrustment of an automobile, we construe the policy "against the insurer and in favor of the insured," *State Capital*, 350 S.E.2d at 68, remembering that "the burden is on the insurer to establish the exclusion." *Id.*; *see also Jenkins*, 378 S.E.2d at 776. Viewing the Excess Policy through this lens, we conclude that the Automobile Exclusion does not exclude coverage for liability resulting from negligent entrustment of an automobile. We thus affirm the district court's determination that the Excess Policy covered the accident.

### b. Pre- and Post-Judgment Interest

Next, we turn to Harford's contention that the district court erred in awarding pre- and post-judgment interest to Chambers. Though Harford raises several different arguments in challenging the district court's determination, it has waived all but one. Because we are not persuaded by the sole argument that Harford preserved, we affirm the district court's conclusion that Chambers is entitled to pre- and post-judgment interest.

Harford's primary argument on appeal is that it cannot be required to pay pre- or post-judgment interest because there was never a "judgment" to which interest could have attached. As mentioned, the Excess Policy states that it indemnifies the insured for "pre-judgment interest awarded against the [i]nsured on that part of *any judgment* covered under

11

this policy," and "all interest earned on that part of *any judgment* . . . after entry of the judgment and before we have indemnified the insured, offered to indemnify, or deposited in court" the monies for the judgment. J.A. 148 (emphasis added). Harford argues that the "Consent Judgment" attached to the Litigation Agreement, which was to be filed only if Chambers did not timely receive the upfront $200,000 payment, cannot serve as the basis for pre-judgment or post-judgment interest.[3]

The district court found that Harford waived this argument by failing to raise it in its opening brief. Typically, we review "a district court's decision to consider a waived argument for abuse of discretion." *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) (citation omitted). In its appellate briefs, however, Harford entirely failed to address the district court's waiver decision. Harford thus forfeited any argument that the district court committed an abuse of discretion. Therefore, we will not review the district court's conclusion that Harford waived the argument that there was no "judgment."

Harford's second argument against the grant of pre- and post-judgment interest, which it raises for the first time on appeal, is that Sections 1 and 5 of the Litigation Agreement indicate that interest cannot be awarded. Because Harford did not raise this argument at the district court level, we decline to consider it. "When a party in a civil case fails to raise an argument in the lower court and instead raises it for the first time before us, we may reverse only if the newly raised argument establishes 'fundamental error' or a denial of fundamental justice." *In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014) (citation

---

[3] Harford does not address whether the district court's declaratory judgment constitutes a judgment to which pre- or post-judgment interest can attach.

12

omitted). The burden is on the party that failed to preserve the argument. *Tarashuk v. Givens*, 53 F.4th 154, 167 (4th Cir. 2022). If an appellant makes no effort to address the "fundamental error" standard, it fails to meet its burden and the court will not entertain the argument. *Id.* Harford did not address the "fundamental error" standard. Thus, we cannot consider its argument about Sections 1 and 5 of the Litigation Agreement.

Finally, we reject the sole argument that Harford properly preserved. In arguing that it owes no interest under the Excess Policy, Harford points to a term in the Litigation Agreement stating that "in no event shall the Harford Insurers be obligated to tender more than . . . $2,000,000 under the [Excess Policy]." J.A. 209. A different provision in the Litigation Agreement, however, clarifies that "[Harford] specifically agree[s] that this [Litigation Agreement] . . . *in no way relieve[s] [Harford] of any obligation to pay money under the policies*, in the event that the Court determines that the policy or policies provide coverage." J.A. 209 (emphasis added). The Excess Policy itself, which the Litigation Agreement does not modify, plainly states that it indemnifies the insured for: "*pre-judgment interest* awarded against the [i]nsured on that part of any judgment covered under this policy," and "*all interest earned* on that part of any judgment . . . *after* entry of the judgment and before we have indemnified the insured, offered to indemnify, or deposited in court" the monies for the judgment. J.A. 148 (emphasis added). Further, the Excess Policy expressly states that interest payments under these provisions "will not reduce" the $2 million liability limit. J.A. 148. In light of these provisions, we conclude that the Litigation Agreement does not preclude the payment of interest. We therefore affirm the district court's award of pre- and post-judgment interest.

13

IV.     Conclusion

For the reasons set forth above, we affirm the district court's rulings that the Excess Policy covered the accident and that Harford owed interest to Chambers.

*AFFIRMED*