**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RICHARD LEHMAN, on behalf of himself and others similarly situated; MICHAEL PUTERBAUGH,
          *Plaintiffs-Appellees*,

v.

WARNER NELSON; WILLIAM BECK, JR.; BRIAN BISH; KLAAS A. DEBOER; MICHAEL G. MARSH; ROCKY SHARP; RICHARD BAMBERGER; DENNIS CALLIES; CLIF DAVIS; TIM DONOVAN; HARRY THOMPSON; CLINT BRYSON; MICHAEL CHURCH; MICHAEL DOYLE; GREG ELDER; GLEN FRANZ; GARY GONZALES; CARL D. HANSON; PATRICK POWELL; GARY PRICE; SCOTT STEPHENS; ROGER TOBIN; GRANT ZADOW, in their capacity as Trustees of the IBEW Pacific Coast Pension Plan; GARY YOUNGHANS,
          *Defendants-Appellants.*

No. 18-35321

D.C. No.
2:13-cv-01835-RSM

ORDER AND
OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, Chief District Judge, Presiding

Argued and Submitted May 13, 2019
Seattle, Washington

Filed December 3, 2019

Before:  Andrew J. Kleinfeld and Michelle T. Friedland,
Circuit Judges, and David A. Ezra,[*] District Judge.

Opinion by Judge Ezra

## SUMMARY[**]

### Labor Law / ERISA

The panel filed (1) an order granting a request for publication, withdrawing the panel's prior memorandum disposition, and directing the filing of an opinion; and (2) an opinion affirming the district court's grant of summary judgment in favor of plaintiffs in an ERISA class action concerning pension contributions.

After the Trustees of the IBEW Pacific Coast Pension Fund learned that the Fund would soon enter "critical status"

---

[*] The Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

under the Pension Protection Act of 2006, they twice amended the Plan. Amendments 14 and 24 had the effect of withholding at least $1.00 per hour from all employer contributions.

Plaintiff Richard Lehman, an electrician, filed a class action against the Trustees under ERISA. Plaintiff was a member of a different local union pension fund. When he was temporarily employed outside his home fund, his employer contributed to the local fund in the place where the work was performed. Plaintiff's home fund and the Pacific Cost Fund were signatories to the Electrical Industry Pension Reciprocal Agreement, under which "travelers" like plaintiff could elect to have employer contributions from other jurisdictions electronically transferred to their designated home pension fund.

In a prior appeal, *Lehman I*, the court held that the Trustees could not keep the $1.00 hourly withholdings they had made pursuant to Amendment 14, rather than including these withholdings in the transfer payments made to travelers' home funds, on the Trustees' theory that the withholdings were not "contributions" within the meaning of the Reciprocal Agreement. The court affirmed the district court's grant of summary judgment in favor of plaintiff and award of damages to the class for all contributions withheld under Amendment 14. The court remanded for the district court to address whether the class could recover contributions withheld under Amendment 24.

On remand, the district court again granted summary judgment in favor of the class, determining that Amendment 24 violated the plain language of Article 5 of the Pacific Coast Pension Plan, which mandated that the Plan collect and transfer all contributions received on behalf of travelers.

Affirming, the panel held that the Trustee's interpretation of Amendment 24 with regard to travelers' contributions was unavailing.

## COUNSEL

Nathan R. Ring (argued) and Michael A. Urban, The Urban Law Firm, Las Vegas, Nevada, for Defendants-Appellants.

Richard J. Birmingham (argued), Joseph P. Hoag, and Christine Hawkins, Davis Wright Tremaine LLP, Seattle, Washington, for Plaintiffs-Appellees.

David Potts-Dupre and Jennifer Bush Hawkins, Potts-Dupre Hawkins & Kramer Chtd., Washington, D.C., for Amicus Curiae Reciprocal Administrator of the Electrical Industry Pension Reciprocal Agreement.

Karl A. Schmidt, Richard A. Clark, Brenton F. Goodrich, and Rudolph G. Klapper, Parker Milliken Clark O'Hara & Samuelian APC, Los Angeles, California, for Amicus Curiae Trustees of the Southern California IBEW-NECA Pension Trust Fund.

## ORDER

The request to publish our disposition is **GRANTED**. The memorandum disposition filed June 12, 2019 is withdrawn and an authored opinion by Judge Ezra is filed concurrently with this order.

Pursuant to Circuit Rule 40-2, by granting the request for publication, we have extended the time to file a petition for rehearing to 14 days after the issuance of this order and, because the mandate has already issued, any further petition for rehearing shall be accompanied by a motion to recall the mandate.

## OPINION

EZRA, District Judge:

The Trustees of the IBEW Pacific Coast Pension Fund (the "Pacific Coast Fund" or the "Fund") appeal the district court's order granting summary judgment in favor of Employee Retirement Income Security Act of 1974 ("ERISA") class action Plaintiffs-Appellees (the "Class"). We affirm.

I.

The underlying facts and procedural history in this case were laid out by the Ninth Circuit in *Lehman v. Nelson*, 862 F.3d 1203 (9th Cir. 2017) ("*Lehman I*"). We repeat only the relevant facts. In May 2008, the Trustees of the Pacific Coast Fund (the "Trustees") learned that the Fund would soon enter "critical status" under the Pension Protection Act of 2006. To respond, the Trustees twice amended the Pacific

Coast Fund Pension Plan (the "Pension Plan")—in Amendments 14 and 24. In relevant part, those amendments had the effect of withholding at least $1.00 per hour from all employer contributions in order to improve the funding status of the Pacific Coast Fund. Thereafter, Richard Lehman filed a putative class action against the Trustees under ERISA. Lehman's suit alleged that the Trustees breached the terms of the Pension Plan, violated sections 204 and 305 of ERISA, and breached their fiduciary duties by withholding $1.00 per hour from Lehman's employer contributions without providing any accrued benefit to him.

## A.

Lehman is an electrician who is a member of the Puget Sound Electrical Workers Pension Trust ("Lehman's Home Fund"). His profession requires him to frequently travel outside the jurisdiction of his home fund. It is common for members of the electrical construction industry to work in the jurisdictions of other local union pension funds. Such members are referred to in the industry as "travelers." When travelers are temporarily employed outside their home fund, their employers contribute to the local funds in the places where they perform work.

Because travelers would be better off with a single large pension from their home jurisdiction's fund than with several small pensions from the fund in each jurisdiction where they have worked, and because some travelers might otherwise lose benefits as a result of their work in other jurisdictions, the trustees of multiple local funds entered into the Electrical Industry Pension Reciprocal Agreement ("Reciprocal Agreement"). Under the Reciprocal Agreement, travelers can elect to have employer contributions from other jurisdictions electronically transferred to their designated home pension fund.

Pursuant to the Reciprocal Agreement, participating funds are required to keep a "separate account" of contributions for each traveler and to transfer an equal amount to all contributions received back into the traveler's home fund within thirty days of receipt. Participating funds are prohibited from charging administrative fees "for the transfer or for any other reason." Under the Reciprocal Agreement, travelers can accrue benefits in their home funds for "[a]ll hours worked in any Participating Fund for which Monies are transferred," and the terms of their home pension plans govern their benefit accrual.

Additionally, the Reciprocal Agreement requires the participating funds to "take all actions . . . necessary to fully implement this Agreement." Participating funds can amend the Reciprocal Agreement at any time through "the written approval of a proposed amendment by a simple majority" vote of participating funds. Participating funds can also terminate their participation in the Reciprocal Agreement by following specified termination procedures. Finally, the Reciprocal Agreement outlines a detailed dispute-resolution process for participating funds to address any disagreements or questions that arise out of the Agreement.

Relevant here and in *Lehman I*, the Pacific Coast Fund is a signatory to the Reciprocal Agreement, as is Lehman's Home Fund. Article 5 of the Pacific Coast Pension Plan incorporates provisions from the Reciprocal Agreement into the Pension Plan. In particular, section 5.04 of the Pension Plan states that the Pacific Coast Fund "shall collect and transfer to the Home Pension Fund all contributions received on behalf of the Employee for work performed by the Employee within [the Pacific Coast Fund's] jurisdiction."

B.

The Pension Protection Act of 2006 ("PPA" or "Act") is designed to help severely underfunded multiemployer pension plans recover. The Act—codified in relevant part at ERISA section 305—requires plan actuaries for multiemployer plans to annually certify "whether or not the plan is or will be in critical status for such plan year or for any of the succeeding 5 plan years" within ninety days of the start of the plan year. 29 U.S.C. § 1085(b)(3)(A)(i). If the plan is certified to be in critical status, ERISA section 305(a)(2)(A) requires the plan sponsor to "adopt and implement a rehabilitation plan" formulated "to enable the plan to cease to be in critical status by the end of the rehabilitation period." *Id.* § 1085(a)(2)(A), (e)(3)(A)(i). The Act sets a deadline for plan sponsors to enact a rehabilitation plan after critical status certification, *id.* § 1085(e)(1)(A), but it does not prohibit plan sponsors from acting before certification to improve the plan's funding status.

C.

In May 2008, the Trustees of the Pacific Coast Fund enacted Amendment 14 in response to learning that the Pension Plan was severely underfunded for 2009 and subsequent plan years. Amendment 14 took effect on July 1, 2008, and added section 3.03(b) to the Pension Plan. Section 3.03(b) states:

> Notwithstanding the foregoing or any other provision of the Plan to the contrary effective July 1, 2008, the first one dollar ($1.00) of required contribution for each and every Hour of Covered Work on and after July 1, 2008, shall not result in any monthly benefit

accrual and shall be utilized solely to improve the funding of the Plan. The same reduction is applicable for required Contributions pursuant to subscription agreements and reciprocal transfers for each and every hour on and after July 1, 2008. . . . The Trustees['] intent in adopting this reduction is to improve the funding condition of the Plan and to encourage collective bargaining parties to recognize the need for increased hourly contributions to the Plan.

Amendment 14 did not remove the language in section 5.04 of the Pension Plan governing transfers to travelers' home pension funds, and the Trustees did not terminate their participation in the Reciprocal Agreement nor seek to amend it before enacting Amendment 14.

On June 29, 2009, the Pacific Coast Fund's actuary certified that the Pension Plan was in "critical status" for the plan year beginning April 1, 2009. As required by the PPA, the Trustees adopted a formal rehabilitation plan on July 8, 2009, through Amendment 24. Amendment 24 added several new provisions to the Pension Plan, including Article 16, which contained the Rehabilitation Plan itself. The Rehabilitation Plan established a default schedule and two alternative schedules describing required increases in employer contributions and reduced benefit-accrual rates that would take effect upon each schedule's implementation.

Among others, the default schedule and two alternative schedules contain different increases in required contribution levels from employers and different reductions in benefit-accrual rates. Because travelers who work in the Pacific Coast Fund's jurisdiction on a temporary basis

accrue benefits in their home funds, they are not affected by the changes in benefit-accrual rates for the Pension Plan, but they are affected by Amendment 24 in other ways.

First, Amendment 24's Rehabilitation Plan imposed a $1.00 hourly withholding from employer contributions for contribution rates below $3.00 per hour.[1]    Second, the Rehabilitation Plan established an additional withholding of all required increases in employer contributions and all surcharge payments made in accordance with the PPA.[2]    The Rehabilitation Plan describes the required increases in employer contributions as "non-benefit contributions," and explains the withholdings as follows:

> Participants who work inside the jurisdiction of this Fund and who have employer contributions sent to an outside fund under a "money follows the man" reciprocity agreement shall have the first dollar of each hourly contribution (for contributions rates less than $3.00 per hour), all increased non-benefit contributions under any Schedule and all employer surcharge contributions remain in the [Pacific Coast Fund] for funding

---

[1] As we noted in *Lehman I*, the $1.00 hourly withholding in Amendment 24 differs from that in Amendment 14 because Amendment 24 only applies to contribution rates less than $3.00 per hour while Amendment 14 applies to all contribution rates.

[2] The PPA mandates the imposition of an "employer surcharge" for plans in critical status.  *See* 29 U.S.C. § 1085(e)(7).  The parties do not dispute the Trustees' right to withhold the surcharge payments under Amendment 24.

purposes only. These contributions result in
no benefit accruals for any participant.

Thus, with respect to travelers who work in the Pacific
Coast Fund's jurisdiction on a temporary basis, the
Rehabilitation Plan requires employers to contribute
increasing amounts of money over time, classifies all
increases beyond the contribution rates in effect on July 22,
2009 as "non-benefit contributions," withholds all non-
benefit contributions, withholds $1.00 per hour on employer
contributions of less than $3.00 per hour, and withholds
surcharge payments. While the amount of the increase in the
new "non-benefit contributions" and the corresponding
withholdings vary among the default and alternative
schedules, all three schedules require increased
contributions and state that these increases "shall be utilized
solely to improve the funding condition of the Plan."

Like Amendment 14, Amendment 24 did not delete or
otherwise alter the text of section 5.04—the Pension Plan
provision requiring transfer of all employer contributions
received on behalf of travelers (i.e., the "pass through"
contributions routed to the travelers' home funds).
However, unlike Amendment 14, Amendment 24 added
sections to each preexisting article of the Pension Plan,
including Article 5, stating that "for all benefits commencing
on or after July 22, 2009, any provision in this Article which
is inconsistent with the requirements of Article 16, the
Rehabilitation Plan, shall be superseded by the provisions
contained within Article 16, except to the extent otherwise
required by applicable law or regulations."

II.

Between July 2008 and March 2009, the Pacific Coast
Fund withheld $1.00 per hour for each hour that Richard

Lehman worked in the Fund's jurisdiction under Amendment 14. In October 2013, Richard Lehman filed suit on behalf of the Class "to recover reciprocity contributions improperly withheld by the Defendants, and the earnings thereon." In the alternative, he requested "an accrued benefit based on such contributions." Lehman sought relief under ERISA sections 502(a)(1)(B), (a)(2), and (a)(3), arguing that he was entitled to the withheld contributions under the terms of the Pension Plan, that the Trustees violated ERISA sections 204 and 305 through the $1.00 hourly withholding, and that the Trustees breached their fiduciary duties by improperly administering the Plan.

## A.

In *Lehman I*, the Trustees argued that they could keep the $1.00 hourly withholdings they had made pursuant to Amendment 14, rather than including at $1.00 per hour in the transfer payments made to travelers' home funds, because those withholdings were not "contributions" within the meaning of the Reciprocal Agreement. 862 F.3d at 1217. We rejected that argument, holding that the Trustees' interpretation of Amendment 14 would conflict with and render nugatory section 5.04 of the Plan, and that Amendment 14 can be read consistently with Article 5 only if it applies to transfers *into* the Pacific Coast Fund and does not apply to the "pass through" payments transferred *out* of the Pacific Coast Fund to the travelers' home funds. *Id.* at 1217–18. We thus affirmed the district court's orders granting summary judgment to Lehman and awarding damages to the Class for all contributions withheld under Amendment 14. *Id.* at 1218.

Additionally, relevant to this appeal, we held that only Amendment 14 was fully litigated in the district court because the complaints, summary judgment briefing, and the

district court's order did not specifically address that the Class sought to recover contributions withheld under Amendment 24, particularly the withholding of increased employer contributions under the default and alternative schedules in the Rehabilitation Plan. *Id.* at 1211–13. We remanded this part of the appeal back to the district court on this issue. In so doing, we noted that "[i]f the district court determines on remand that the [Class is] entitled to the transfer of all contributions withheld under Amendment 24 based on the terms of the Pension Plan, as it did with respect to Amendment 14, then it need not determine whether the default and alternative schedules in the Rehabilitation Plan violated ERISA's minimum accrual requirements." *Id.* at 1220.

### B.

Upon remand, the district court determined that Amendment 24 violates the plain language of Article 5 of the Plan. The court explained that "[s]ection 5.04 mandates that the Pension Plan collect and transfer 'all contributions received on behalf of the Employee.'" *Lehman v. Nelson* ("*Lehman II*"), No. C13-1835RSM, 2018 WL 333202, at \*5 (W.D. Wa. Jan. 9, 2018) (quoting section 5.04). The court agreed with the Class that the Trustees cannot "simply label the collectively bargained contributions 'benefit' and 'non-benefit contributions' to get around Article 5 of the Plan, and that nothing in the Pension Protection Act prohibits or requires Defendants or the Pacific Coast Plan to use reciprocity contributions to fund the Pacific Coast Plan." *Id.*

The court again granted summary judgment in favor of the Class.[3]  The Trustees again appealed.

### III.

"Where an ERISA Plan grants discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a plan administrator's interpretation of a plan is reviewed for abuse of discretion."  *Lehman I*, 862 F.3d at 1216 (quoting *Tapley v. Locals 302 & 612 of Int'l Union of Operating Eng'rs-Emp'rs Constr. Indus. Ret. Plan*, 728 F.3d 1134, 1139 (9th Cir. 2013)).  We review the district court's application of this standard and the district court's grant of summary judgment de novo.  *See id*.  On appeal, the Class contends that we should review the Trustees' interpretation of Amendment 24 de novo because the issue in this case is purely a legal question and does not concern any interpretation of the Plan.  As in *Lehman I*, *see* 862 F.3d at 1216–17, we need not decide this issue because the Trustees' arguments in support of their interpretation of Amendment 24 fail even under the deferential abuse-of-discretion standard.

### IV.

The district court properly granted summary judgment in favor of the Class.  The Trustees argue that Amendment 24 specifically created "non-benefit contributions" and excluded those from the definition of "contributions" for which contributions would need to be made to a traveler's home fund.   Just like the Trustees' interpretation of

---

[3] Although the Trustees raised a dispute as to whether Lehman was an adequate class representative for this claim, they later agreed that Michael Puterbaugh could be a named representative and that this change mooted this adequacy dispute.

Amendment 14 in *Lehman I*, however, the Trustees' interpretation of Amendment 24 with regard to travelers' contributions is inconsistent with the Pacific Coast Plan's own definition of "contribution" found in section 1.04, and conflicts with and renders nugatory section 5.04.

Section 5.04 of the Pension Plan incorporates the Reciprocal Agreement signed by the Pacific Coast Fund. Pursuant to section 5.04, travelers' contributions are simply pass-through contributions made to the travelers' home funds and are not assets of the Pacific Coast Fund. The Trustees' attempts to distinguish "benefit" and "non-benefit" contributions pursuant to collective bargaining agreements are unavailing—any contributions on behalf of a traveler must be passed through under the Plan. Because travelers' contributions do not belong to the Pacific Coast Fund, the district court's order did not violate the Pension Protection Act of 2006.[4]

**AFFIRMED**.

---

[4] Although the Trustees' opening brief mentions "fiduciary duties," it does not offer any argument based on fiduciary duties. Any such argument has therefore been forfeited. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1079 n.26 (9th Cir. 2008) (en banc) ("It is well-established that a bare assertion in an appellate brief, with no supporting argument, is insufficient to preserve a claim on appeal.").